UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY NELSON, Individually; and )
PATSY NELSON, Individually,            )
                                                      )
            PLAINTIFFS,                      )
                                                      )
vs.                                                  )            CASE NO. CIV-12-72-C
                                                      )
GLOCK, INC., a Georgia corporation  )
                                                      )
            DEFENDANT.                      )

**DEFENDANT, GLOCK, INC.'s
MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S
PROPOSED EXPERT WITNESS CARL HILDEBRDANT
AND BRIEF IN SUPPORT**

Respectfully submitted,

Christopher Renzulli (*pro hac vice*)
Edwin T. Brondo, Jr. (*pro hac vice*)
RENZULLI LAW FIRM, LLP
81 Main Street, Suite 508
White Plains, New York 10601
(914) 285-0700 – Telephone
(914) 285-1213 – Facsimile

-and-

Gary M. Chubbuck, OBA # 1682
CHUBBUCK, DUNCAN & ROBEY, P.C.
119 N. Robinson, Suite 820
Oklahoma City, OK 73102
(405) 236-8282 - Telephone
(405) 236-2828 - Facsimile

ATTORNEYS FOR DEFENDANT,
GLOCK, INC.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES.......................................................................................ii

I. INTRODUCTION.................................................................................................1

II. BACKGROUND...................................................................................................3

III. CARL HILDEBRANDT'S QUALIFICATIONS AND OPINIONS............................6

IV. ARGUMENT AND CITATION OF AUTHORITY.......................................................8

    A.  HILDEBRANDT IS UNQUALIFIED TO RENDER OPINIONS
       IN THIS CASE...................................................................................9

    B.  HILDEBRANDT'S OPINIONS ARE UNRELIABLE..........................................11

V. CONCLUSION....................................................................................................17

## TABLE OF AUTHORITIES

*Cases*:

*Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1287 (N.D. Okl. 2000)...................10

*Barrett v. Black & Decker (U.S.) Inc.*, 2008 WL 5170200 (S.D.N.Y. 2008)...............13, 14

*Black v. M & W Gear Co.*, 269 F.3d 1220 (10th Cir. 2001)................................................13

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)......11, 12

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996).................................12, 14

*Daubert v. Mitchell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)......1, 8, 9, 11, 12, 14

*General Electric v. Joiner*, 522 U.S. 136 (1997).................................................................11

*Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082 (W.D. Okl. 2009)...............................9

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).........................................8, 9, 11

*Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1133-34 (10th Cir. 2009)..............................10

*Mitchell v.Gencorp Inc.*, 165 F.3d 778 (10th Cir. 1999).......................................................11

*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001)...............8, 9, 10

*Smith v. Sears Roebuck and Co.*, 2006 WL 687151 (W.D. Okl. 2006).................13, 14, 15


*Statutes*:

Rule 702, Fed.R.Evid............................................................................................................1

**DEFENDANT, GLOCK, INC.'s**
**MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS'**
**PROPOSED EXPERT WITNESS CARL HILDEBRDANT**
**AND BRIEF IN SUPPORT**

COMES NOW, the Defendant, Glock, Inc., (hereinafter "Glock"), and moves this Court for an Order excluding the opinion testimony of Plaintiffs' proposed expert witness, Carl Hildebrandt ("Hildebrandt"), on the grounds that the opinions offered by Hildebrandt do not satisfy the requirements for expert witness testimony as set forth by Rule 702 of the Federal Rules of Evidence and ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993).  Glock offers the following Brief in Support[1]:

## I.  INTRODUCTION

Hildebrandt worked for a firearms manufacturer, Savage Arms, for over forty years, during which time he assisted in designing firearms and writing instructions manuals for firearms. Based upon his experience, he knew from the moment he read the plaintiffs' complaint in early 2011, that plaintiffs' design defect allegations were unfounded.  *See* Deposition of Carl Hildebrandt ("Hildebrandt Depo.") at 19-21, Exhibit "E".  Hildebrandt also reviewed the Instructions for Use manual provided by Glock, and found that it contained "all the warnings you should have as far as using the gun."  *Id.* at 26.  Plaintiffs should have recognized from Hildebrandt's opinions on these issues that their claims are meritless and simply not filed them.  Instead of heeding Hildebrandt's

---

[1] All references to exhibits herein refer to exhibits attached to the Declaration of Edwin T. Brondo, Jr. in Support of Glock, Inc.'s Motion for Summary Judgment, Motion to Exclude Testimony of Carl Hildebrandt and Motion to Exclude Testimony of Tyler Kress filed herewith.

1

opinions, plaintiffs filed this action in 2012[2] and now seek to prevent Hildebrandt from testifying about design defects or failure to warn issues by limiting his testimony to testing he performed and the issue of causation. *Id.* at 4-6.

As if their disingenuous attempt to limit their proposed firearms expert to opining about what "happened" was not bad enough, the truth is Hildebrandt does not even know the facts of this case.  Indeed, Hildebrandt was not provided with any of the ten (10) fact depositions conducted in this case (not even plaintiff's own deposition) or medical records (which Hildebrandt testified would have been important to him), and was forced to rely on what plaintiffs' counsel told him and three (3) short incident reports which contain very limited information, some of which is known to be inaccurate.  Even more problematic is that Hildebrandt's causation "testing" (as distinguished from the rest of his testing which simply proved that plaintiffs' design defect theories are meritless) is admittedly an unreliable, apples to oranges scenario, which does not even prove plaintiffs' theory of causation.  Add to all of this the facts that Hildebrandt is also unqualified to offer opinions in this case (most especially on the issue of causation) and his ultimate opinion as to what happened defies the laws of physics, and the only viable conclusion is that Hildebrandt's proposed testimony on what "happened" in this case should be excluded by the Court.

---

[2] Arguably in violation of FRCP Rule 11, since Hildebrandt's opinions were known in 2011.

## II. BACKGROUND

### A.     *The Basic Facts*

On November 5, 2008, plaintiff, Anthony Nelson, an Oklahoma Highway Patrol ("OHP") Officer was participating in firearms training with his Glock Model 31C pistol at the Shawnee Police Firing Range in Shawnee, Oklahoma.  Plaintiff's Glock pistol is a compensated Glock pistol meaning that there are two ports (known as "compensator ports") cut into the top of the barrel and slide near the muzzle end of the pistol which reduce recoil in the pistol by venting pressure and gases upwards.[3]  *See* Figure 1 below.



**Figure 1**

---

[3] Plaintiff purchased this Glock pistol in 2004, and carried it regularly from then until the date of his incident.  Plaintiff specifically purchased a compensated Glock pistol because of the reduced recoil which it provided.  *See* Deposition of Anthony Nelson ("Plaintiff Depo.") at 64-65, Exhibit "A".

As part of the training on November 5, 2008, plaintiff performed a drill in which he held the grip of the pistol in his right hand, placed his left hand on top of the pistol, grabbed the slide and then discharged the pistol.  When plaintiff performed the drill his left hand was injured.

### B.     *The Drill*

The goal of the drill plaintiff was performing at the time of his injury was apparently to induce a "malfunction" in the pistol by preventing the slide from properly cycling.[4]  After causing the "malfunction," the plaintiff was supposed to complete the drill by clearing the malfunction and firing another round.   As a general matter, law enforcement officers carrying semi-automatic pistols are taught to never impede or obstruct the slide because it can cause a malfunction.  *See* Deposition of Charles Rousey, OHP Firearms Instructor ("Rousey Depo.") at 12-13, 39, Exhibit "B"; Deposition of Ben Crockett, OHP Firearms Training Supervisor ("Crockett Depo.") at 20, 29, Exhibit "C". However, because malfunctions occur with **_all_** semi-automatic pistols, law enforcement officers perform malfunction drills in order to practice quickly and instinctively clearing a malfunction in case it happens while they are attempting to defend themselves or others.

---

[4] "Cycling" of the slide on a semi-automatic pistol such as the Glock 31C refers to the process by which the slide moves rearward when the pistol is discharged, which in turn ejects the fired cartridge casing from the chamber, after which the slide then returns forward to its original position which simultaneously loads an unfired round of ammunition from the magazine into the chamber, thereby readying the pistol to be fired again.   The term "malfunction" refers to a circumstance in which this process does not occur properly, and either the fired cartridge casing is not ejected (thus preventing an unfired round of ammunition from being loaded) or an unfired round of ammunition is not properly loaded.

*See* Rousey Depo. at 57-58, Exhibit "B"; Crockett Depo. at 29-35, 53-54, Exhibit "C".

The drill plaintiff was performing, however, is only performed by the Oklahoma Highway Patrol.  *See* Crockett Depo. at 72, Exhibit, "C" (testifying that he has never heard of any other law enforcement agency performing this drill in either his capacity as an OHP firearms instructor or his capacity as the supervisor for OHP firearms instructors); *see also* Expert Report of Michael Shain ("Shain Report") at 12, Exhibit "D" (noting that he has trained law enforcement throughout the U.S. and the world for 25 years and has never heard of a drill even remotely resembling the drill plaintiff was performing at the time of his injury).  In other words, plaintiff was injured while performing a drill which is an anomaly in the law enforcement training community.

### C.   *The Incident*

The instructions for the drill published by OHP require the shooter to grasp the slide of the pistol from underneath the barrel (*see* 2008 Quarterly Pistol Training at 16-17, Exhibit "G"), as opposed to the way plaintiff and his firearms instructor, Trooper Charles Rousey ("Rousey")(the only two eyewitnesses to the incident), testified that they were performing the drill.  Plaintiff testified that his hand was on top of and at the back of the pistol slide (behind the ejection port located in the middle of the pistol and well away from the compensator ports at the other end of the pistol slide near the muzzle). *See* Plaintiff Depo. at 119-20, Exhibit "A".  Rousey testified that plaintiff's hand was over the ejection port (not quite as far to the rear as plaintiff claims, but still well behind the compensator

ports).  *See* Rousey Depo. at 67-68, Exhibit "B".  Both plaintiff and Rousey testified that: (1) Rousey placed his hand over the top of plaintiff's hand in order to ensure a strong grip on the pistol and slide; (2) they both, in fact had a strong grip on the pistol and slide; (3) they were fully aware of the location of the compensator ports and the dangers of getting near them during firing; (4) they took specific precautions at the time of the incident to ensure that their hands were not near the compensator ports; and (5) their hands, the pistol and the slide did <u>not</u> move.  *See* Plaintiff's Depo. at 119-20, 123-26, Exhibit "A"; Rousey Depo. at 67-68, Exhibit "B".  Despite all of this, plaintiff was injured.

### III. CARL HILDEBRANDT'S QUALIFICATIONS AND OPINIONS

**A.**     *<u>Qualifications</u>*

Hildebrandt's only qualification to serve as an expert in this case is that he worked for Savage Arms, a firearms manufacturer, for over forty (40) years, during which time he was involved in the design of <u>rifles and shotguns</u>, and writing instruction manuals for firearms manufactured by Savage Arms.  Hildebrandt Depo. at 26, 60-62, Exhibit "E".  He is not a licensed engineer, he holds no graduate or undergraduate degrees, and his formal education is essentially limited to high school.  *See id.* at 59-60.

Of particular significance in this case, Hildebrandt has never designed a semi-automatic pistol.  *Id.* at 141.  He also has never been in law enforcement and has no experience whatsoever with law enforcement training or firearms handling.  *Id.* at 58-59. In fact, Hildebrandt testified that the only law enforcement training documents he's ever seen were the OHP 2008 training procedures from this case and that he does not know

6

what types of training law enforcement officers receive.  *Id*.

B.      **Opinions**

Plaintiffs' complaint alleges that the Glock pistol was defective in design and that

Glock allegedly failed to provide adequate warnings with the pistol, and that such defects

and/or failure to warn caused plaintiff's injuries.  *See* Complaint, Exhibit "L".  As

discussed above, despite plaintiffs' attempt to limit his testimony, Hildebrandt testified at

his deposition that he does not believe the Glock Model 31C is unsafe and that the

instructions for use manual "has, basically, all the warnings you should have as far as

using the gun."  *See* Hildebrandt Depo.  at 26, 114, Exhibit "E".  Hildebrandt also testified

that plaintiffs' design defect allegations—that the pistol was designed such that the gasses

could travel rearwards from the compensator ports and that the pistol should have been

designed with "vent guards"—are totally wrong.  *Id*. at 20-21.  In fact, he even performed

testing which proved that they are wrong.  *Id.* at 44-47.

Realizing that Hildebrandt actually contradicts plaintiffs' theories, plaintiffs'

counsel now attempts to have Hildebrandt offer some "causation" testimony.  Hildebrandt

seeks to testify that in order for plaintiff to perform the drill such that his left hand was

located on top of the pistol, plaintiff's right elbow would have to have been bent.

According to Hildebrandt, firing with a bent elbow resulted in the pistol moving rearwards

as a result of the recoil more than when a shooter fires with a straight locked elbow.  As

such, Hildebrandt opines that this additional rearward movement of the pistol as a result of

the recoil caused the pistol to move rearwards under plaintiff's hand such that the compensator ports wound up underneath plaintiff's hand as significant gases were exiting the compensator ports, resulting in the injury to plaintiff's hand.

According to Hildebrandt, this opinion is based upon testing he performed with an exemplar Glock Model 31C, in which he fired the pistol with pieces of raw chicken thigh laid on top of the slide in order to determine if the pistol would move rearwards under the chicken such that it would wind up over the compensator ports as he opines happened with plaintiff's hand.[5]  Notably, although none of his tests resulted in the chicken ending up over the compensator ports, much less ending up over the compensator ports such that the chicken was struck by gases exiting the compensator ports, Hildebrandt seeks to tell the jury that is what happened to the plaintiff.  *Id.* at 53, 55, 195-96.

### IV. ARGUMENT AND CITATION OF AUTHORITY

Rule 702 of the Federal Rules of Evidence "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *See **Ralston v. Smith & Nephew Richards, Inc.**,* 275 F.3d 965, 969 (10th Cir. 2001)(citing ***Daubert v. Merrell Dow Pharmaceuticals, Inc.**,* 509 U.S. 579 (1993) and ***Kumho Tire Co., Ltd. V. Carmichael**,* 526 U.S. 137 (1999)).  Specifically, the trial court must first determine whether the proposed expert is qualified to offer the proposed expert opinions. *Id.*  If the expert is qualified, the trial court must then determine if the proffered opinions

---

[5] *See* Video of Hildebrandt "testing" to be submitted to the Court under separate cover.

are sufficiently reliable. *Id.* The burden of proof lies with the plaintiffs to demonstrate by a preponderance of the evidence that their proposed expert's opinion conforms to Rule 702's requirements. *See Daubert*, 509 U.S. at 593. If the trial court finds either the expert lacking in qualifications or the proffered opinions lacking in reliability, *Daubert* requires that the witness's testimony and opinions be excluded.

### A.   *Hildebrandt is Unqualified to Render Opinions in this Case*

The determination as to whether a proposed expert is qualified depends on whether the expert has sufficient "knowledge, skill, experience, training or education" to render the proffered opinions. *Ralston*, 275 F.3d at 969; *see also* Fed. R. Evid. 702. In assessing qualifications, the trial court must consider not just the proposed expert's general qualifications, but also "ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'" *See Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082 (W.D. Okl. 2009)(quoting *Kumho*); *see also Ralston*, 275 F.3d at 969.

Here, Hildebrandt seeks to opine about the cause of plaintiff's injuries. The incident in this case involved two highly trained and experienced law enforcement officers interacting with each other and a semi-automatic pistol to perform a specific firearms training drill. As such, evaluating the cause of the incident and reconstructing the incident as Hildebrandt attempted to do necessarily require experience with and an understanding of law enforcement training. Indeed, without such experience an expert cannot adequately

9

review and evaluate the facts of a case such as this; nor can an expert adequately understand and account for how the two involved law enforcement officers' training and skill might affect the manner in which the drill was performed and how they were interacting with the pistol at the time of the incident.  Since Hildebrandt admittedly has no law enforcement experience or training, he is clearly unqualified to offer opinions about causation in this case.[6]  *See Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1133-34 (10th Cir. 2009)(finding a proposed expert in a case involving an incident during a mountain bike race unqualified because he lacked of experience with customs and practices of mountain bike racing as opposed to paved road races).

Even were Hildebrandt's lack of experience with law enforcement training not an issue, his lack of experience and expertise with respect to the design of semi-automatic pistols also renders him unqualified to perform accident reconstruction involving a semi-automatic pistol.  *See Ralston*, 275 F.3d at 969-70 (holding board certified orthopedic surgeon unqualified to offer opinions on orthopedic nail because he lacked specific experience with the nail); *see also Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1287, 1292-93 (N.D. Okl. 2000)(finding emergency room physician with no training in

---

[6] One example of how this deficiency in Hildebrandt's qualifications is specifically problematic in this case is that, as a result, Hildebrandt admittedly has no experience with respect to what positions law enforcement officers are trained to shoot from.  *See* Hildebrandt Depo. at 58-59, Exhibit "E".   Thus, Hildebrandt has no way to evaluate or account for the fact that law enforcement officers are trained to shoot with a bent elbow, much less consider and account for how the skill developed from this training might affect the way the drill he attempted to reenact was performed by the plaintiff and Rousey.

orthopedics or spinal surgery unqualified to offer expert testimony about an orthopedic spinal device).  Perhaps tellingly, Hildebrandt has never offered expert testimony about the design and function of semi-automatic pistols, or any accident reconstruction work involving semi-automatic pistols.  *See* Hildebrandt Depo. at 137-38, Exhibit "E".  Thus, Hildebrandt is clearly unqualified to offer expert testimony in this case, and his opinions should be excluded by the Court.

### B.    *Hildebrandt's Opinions are Unreliable*

The fundamental purpose of the reliability requirement is to make certain that an expert, whether based on studies or experience, employs the same level of "intellectual rigor" in the courtroom as the expert would employ in their relevant field outside the courtroom.  *Kumho*, 526 U.S. at 151.  In other words, the Court's role is to rule out subjective belief or speculation, and ensure that proffered opinions are based on "good grounds" based on the information available.  *Daubert*, 509 U.S. at 590.  Accordingly, for an expert opinion to be reliable, it must be based upon sufficient facts and data, and must be the product of a reliable methodology which has been reliably applied to the facts and data available in the case.

Notably, nothing requires a district court to admit expert testimony which is based only on the say so or *ipse dixit* of the expert.  A court can conclude the gap is too great. *General Electric v. Joiner*, 522 U.S. 136, 146 (1997).  "Any step that renders the analysis unreliable...renders the expert's testimony inadmissible."  *Mitchell v.Gencorp Inc.*, 165

11

F.3d 778, 782 (10th Cir. 1999).  This is true whether the step completely changes a reliable method or merely misapplies the data or facts. *Id.*   Thus, in determining whether an expert's proffered opinions are reliable, the trial court must scrutinize the factual basis of the expert's opinions and the reasoning and methodology employed by the proposed expert to reach the proffered opinions.

In fulfilling this obligation, courts consider a number of different factors.   One factor is whether the proposed expert testimony is sufficiently tied to the facts of the case. *See Daubert*, 509 U.S. at 591.  In considering this factor, the trial court must look at whether the expert considered the available facts and data in the case at hand, and available research, data, studies and other information which supports the opinion.  Thus, the Supreme Court has held that "when an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).  Put differently, "expert testimony should be excluded if it is speculative or conjectural, or if it is based upon assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

Here, Hildebrandt seeks to opine about what happened without knowing what happened.  Rather than providing Hildebrandt with the volumes of available facts, data

12

and information developed in this case such that Hildebrandt could consider and evaluate the facts and data for himself, plaintiffs apparently withheld this information from him. Indeed, Hildebrandt testified that he was not provided with any deposition testimony (not even the plaintiff's deposition) or medical records, and the only factual information he was provided (other than what he was told by plaintiff's counsel) were the incident reports (none of which were authored by plaintiff and which Hildebrandt admits contain inaccurate information and lack any specific detail). Hildebrandt Depo. at 30, 56-58. As a result, Hildebrandt's opinions are based upon almost no facts and data, much less sufficient facts and data.[7] This alone renders his opinions unreliable and inadmissible.

Indeed, because Hildebrandt does not know what happened, his opinion on what happened (that plaintiff's hand moved), is impermissibly contradicted by plaintiff's and Rousey's deposition testimony (that plaintiff's hand did not move). This alone is a fundamental flaw in Hildebrandt's opinions which renders them unreliable and inadmissible. *See Smith v. Sears Roebuck and Co.*, 2006 WL 687151, *4 (W.D. Okl. 2006)(holding plaintiff's expert's opinions unreliable because they failed to take into account plaintiff's deposition testimony); *Black v. M & W Gear Co.*, 269 F.3d 1220, 1237-38 (10th Cir. 2001)(excluding expert testing because the tests were not specific to plaintiff's accident).

---

[7] Simply put, plaintiffs' proffering of Hildebrandt as an expert witness on causation is almost comical as it is impossible to render a reliable opinion about the cause of an injury without knowing what the eyewitnesses to the incident testified to and what injury was sustained.

For example, in **Barrett v. Black & Decker (U.S.) Inc.**, a case involving unreliable expert testimony which is remarkably similar to this case, the court excluded the testimony of plaintiff's expert because his opinions contradicted plaintiff's own testimony about how the accident occurred, and sought to provide his own version of an accident he did not witness.  *See Barrett v. Black & Decker (U.S.) Inc.*, 2008 WL 5170200, *7-8 (S.D.N.Y. 2008); *see also Smith*, 2006 WL 687151 at *4 (excluding plaintiff's proposed expert's opinion because it was contradicted by plaintiff's testimony).  The **Barrett** court also noted that a proposed expert's testing, which is not based upon the known and available facts of the case, cannot form the basis of an expert opinion, because such unsupported opinions amount to an *ipse dixit* which cannot satisfy the reliability requirements of **Daubert**.  *See id.* at *8.  Thus, Hildebrandt's opinions and testing cannot meet the reliability requirements of **Daubert** and should be excluded.

Hildebrandt's opinions are also unreliable because they are based entirely upon unreasonable assumptions.  Indeed, although it is the causation expert's job to determine what actually caused the injury, in this case plaintiffs' counsel commanded that Hildebrandt assume that plaintiff's hand started behind the compensator ports and that the compensator ports were the ultimate cause of the injury, and only tasked him with determining *how* that could have occurred.  Taking these two assumptions together, however, forces Hildebrandt to the conclusion that plaintiff's hand moved—a fact which is directly contradicted by the testimony of both plaintiff and Rousey.  This too, renders

14

Hildebrandt's opinions unreliable and inadmissible. *See Smith*, 2006 WL 687151, *4 (expert cannot unjustifiably extrapolate from an accepted premise to an unfounded conclusion); *see also Boucher*, 73 F.3d at 21 (expert's opinions may not be based upon assumptions which are unrealistic and contradictory).

Further, Hildebrandt's deposition testimony reveals that the testing he performed was essentially an apples and oranges comparison.  For instance, Hildebrandt admitted that two human hands gripping the slide of a pistol (as occurred in this case) is very different than a piece of chicken laid on top of the slide of a pistol (as occurred in his tests).  Hildebrandt Depo. at 56, 78-79, Exhibit "E".  He further admitted that his right arm and bent right elbow were essentially limp during his testing, while he has no information about how firmly or weakly plaintiff was holding the pistol with his right/elbow at the time of the incident.  *Id*.  Thus, Hildebrandt admitted that his testing involved different facts than those involved in the incident, and that he had no way to compare his testing to what actually happened in the incident.[8]  *Id.* at 82-84.  Stated succinctly, Hildebrandt's testing is an inadmissible apples to oranges comparison.  *See Boucher*, 73 F.3d at 21 (expert opinion which amounts to an apples to oranges comparison is inadmissible).

Another factor which courts consider in determining reliability is whether the expert's theory can be or has been tested for reliability.  *See Smith*, 2006 WL 687151, *4. Here, Hildebrandt testified that if he had "sufficient information" he could have devised a

---

[8] This, of course, is not at all surprising since Hildebrandt does not what the facts are.

15

test to prove whether what he claims happened in this case could actually happen in reality.  Hildebrandt Depo. at 196-198, Exhibit "E".  Put differently, Hildebrandt's theory could be tested, but he (or plaintiffs' counsel) chose to proceed with speculation instead of actually testing it.  In fact, the testing Hildebrandt did actually perform contradicts his theory:

> Q.   I'm correct that in -- that not one of your tests where you set a piece of chicken behind the compensator ports ever resulted in the chicken being blasted by the compensator ports.
> **A.   That's correct.**
> \* \* \*
> Q.   In any of your tests did the chicken wind up starting behind the compensator ports and wind up over them?
> **A.   None.**
> Q.   Okay.  So none of your tests have demonstrated that that's even possible for a piece of chicken, or any item, to be placed behind the compensator ports and wind up over them?
> MR. COX:  Object to the form.
> **A.   We didn't do any tests to find that out.**

*Id.* at 195-96.  This is particularly significant, given that Seth Bredbury, a firearms design engineer retained on behalf of Glock, performed an engineering calculation which shows that Hildebrandt's theory is impossible and defies the laws of physics.  *See* Bredbury Report at 3-4, Exhibit "N".

Finally, in a quite telling exchange during his deposition Hildebrandt essentially admitted that his opinion lacked any basis or methodology other than *ipse dixit*:

> Q.   You've never seen a picture of his injury?
> **A.   No, I haven't.**
> Q.   You haven't seen any medical records from the time of the incident or currently.

**A.**   **No, I haven't.**

Q.   Okay.  So you have no idea what his condition actually is.

**A.**   **No, I don't.  Other than what I've been told.  And that was pretty early on.**

Q.   So -- and who told you that?

**A.**   **Probably Attorney Merritt.**

Q.   So, without any medical records, without any deposition testimony, without knowing how quickly it would have to move or the rearward forces or the downward forces or how quickly or -- excuse me -- how tightly the troopers were holding the slide or how much force they were pushing down on it, without all of that information, you  believe, more likely than not, that this pistol recoiled under his hand?

**A.**   **Yes, I do.**

Q.   And just so I'm clear, if you had all that information, though, it could be tested to determine whether or not --

**A.**   **I think you could --**

Q.   -- what you believe happened actually happened.

**A.**   **I think you could determine a test that would bring all those factors into play.**

Q.   And you could determine if it's even possible, right?

**A.**   **That would be the ultimate test.**

*Id.* 107-09.  Hildebrandt, however, did not obtain the necessary information or perform the required testing.  In sum, Hildebrandt's opinions lack any reliability whatsoever, and amount to nothing more than force-fed unsupported conclusions resulting from plaintiffs' counsel's assumptions, a total lack of facts and data, and no methodology at all.

/

/

/

/

/

/

## V. CONCLUSION

For all of the reasons discussed herein, defendant respectfully submits that Hildebrandt cannot satisfy either the qualification or the reliability requirements of *Daubert*, and the Court should, therefore, enter an Order excluding the opinion testimony of Hildebrandt.

Respectfully submitted,

*/s/ Edwin T. Brondo, Jr.*
Christopher Renzulli (*pro hac vice*)
Edwin T. Brondo, Jr. (*pro hac vice*)
RENZULLI LAW FIRM, LLP
81 Main Street, Suite 508
White Plains, New York 10601
(914) 285-0700 – Telephone
(914) 285-1213 – Facsimile

-and-

Gary M. Chubbuck, OBA # 1682
CHUBBUCK, DUNCAN & ROBEY, P.C.
119 N. Robinson, Suite 820
Oklahoma City, OK 73102
(405) 236-8282 - Telephone
(405) 236-2828 - Facsimile

ATTORNEYS FOR DEFENDANT,
GLOCK, INC.

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on the 9th day of January, 2013, I electronically transmitted the attached document to the Clerk of the Court using ECF System for filing.  Based on the electronic records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following recipients:

Mark Cox
Law Office of Mark Cox
Wiley Post Office Park
NW 63rd and Rockwell
7010 NW 63rd St.
Bethany, OK 73008
Phone (405) 722-1945
Fax (405) 722-2162

Attorneys for Plaintiff

*/s/ Edwin T. Brondo, Jr.*
Edwin T. Brondo, Jr.

19